UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

Jorge Rocha                    §
    Plaintiff,

vs                             § Case No. 3:23-CV-50
                                 Groh-Trumble-Sims
United States of America
et al,
    Defendant,                  §

PRO SE SUIT PURSUANT TO THE FEDERAL TORT CLAIMS ACT

## I. JURISDICTION

Under the FTCA, Congress has waived the sovereign immunity of the United States, exposing it to tort liability for claims for money damages... for injury of loss of property, or personal injury or death caused by the negligent or wrongful act of omission of any employee of the Government while acting within the scope of his office or employment, so long as certain conditions are satisfied. See 28 § 1346.

Plaintiff does state that this suit will prove beyond all doubt that as a result of employees of the federal government acting in a negligent and wrongful manner he suffered further physical injury, and mental and emotional suffering as well and does now bring this FTCA suit.

## II. STATEMENT OF FACTS

1) On or about Jan. 03, 2022 Plaintiff was in an accident and of which resulted in an injury to his right foot and ankle.

2) Immediately after he suffered this injury, he was taken to the holding cells in the Lt's office at USP Hazelton and examined by medical staff Thropon.

1.

3) When he was examined by staff Thropon, she immediately saw that he had in fact suffered a serious injury to his right foot & ankle and an injury that clearly required immediate medical attent ion. This was due to the fact that his right foot/ankle were sever ely swollen and turning purple. In addition to him being unable to apply pressure on his foot and walk on it. It was at this time and as a licensed medical professional for her to have asked for a x-ray to see if his foot and ankle were broken.

4) Instead of her discharging her duty as required; She merely stated: Huh... and then allowed other staff to escort him to the SHU and whereby he was subjected to further severe pain, mental and emot-oinal injury. At the very least, Staff member Thropon should have or-dered that he be given a wheel chair and so as not to inflict him to any further damage and injury to his foot/ankle.

5) Upon him arriving at the SHU, he was then ordered by staff and to remove his shoes. He stated that he was unable to and immed-iately showed SHU staff his severely swollen right foot/ankle. SHU staff stated that: I don't give a damn... He was then forced through much pain and suffering to remove his shoe and then placed in the cell he was assigned to.

6) Notwithstanding the fact that medical and other USP Hazelton staff were fully aware of his serious injury and the physical, mental and emotional pain he was suffering. He was never provided any medic-al attention on Jan. 03,2022.

7) The pain was unbearable and he was unable to sleep much on that first night he spent in the SHU. The next day while 2 officers

2.

were conducting the court, one of the officer's was named Vernon, called me over to the window, after he saw that I was having a hard time standing up for the court. Officer Vernon then asked me: Why in the fuck am I not standing up when they are at the door doing the count?

8) Plaintiff immediately apologized and upon showing them his severely injured foot/ankle, he explained to them that he had suffewred an injury and has yet to be given medical attention. That the injury is causing him much pain and it hurts very much whenever he moves and moreso when he tried to step on it.

9) This explanation and showing Vernon and the other officer his severely injured foot/ankle, was not good enough for either officer and via Vernons anger he did state: I dont give a fuck about your injury, and that you are stupid for not following orders to stand up for count.

10) About an hour after Vernon and the other officer left, the other officer who was with Vernon earlier that morning came back to the medical cell I was initially placed in and told Plaintiff to pack his stuff, that he was going to pair him up with another cellie.

11) Plaintiff was then taken out of the medical cell and via much pain and suffering was escorted to a new cell on a different range. All of this can be confirmed by reviewing the SHU video surveillance for said date and time.

12) At this time, it was unknown to Plaintiff that his right foot & ankle were in fact fractured. Plaintiff was then placed in a cell with a Puerto Rican prisoner. Upon him being placed in this new cell

and an unknown staff member throwing his mattress and linens in the cell. Walks inside the new cell and tells the Puerto Rican prisoner that I (plaintiff) needs to be taught a lesson. This officer also told this Puerto Rican prisoner: Fuck him, dont give him the bottom bunk and the officer commenced to exit the cell.

13) Via Plaintiff's time as a federal prisoner and hearing stories of other prisoners who are placed in the SHU by staff with this attitude and making the comments as stated in the above written ¶'s, it is clear that this officer was telling this particulare prisoner that Plaintiff was to be assaulted and beaten by this Puerto Rican prisoner. This is a widely used practice by BOP officials who work in the SHU's and is directed as prisoners who refuse to cooperate with staff and snitch on other prisoners who are believed to have violated prison rules.

14) The only savings grace was that this particular Puerto Rican prisoner was a Christian and told Plaintiff not too worry that he was not going to assault him as he knows staff wanted him too.

15) The days that passed in the SHU at USP Hazelton were filled with much pain and mental, and emotional suffering. This is not even mentioning the fact that the SHU at USP Hazelton was unbearably cold as staff willfully and intentionally fail to regulate the air tempet-ures. This cold environement only increased the stiffness and pain that Plaintiff was forced to suffer and as a result of staff denying him constitutionally adequate medical attention.

16) From about Jan. 04,2022, Plaintiff began to submit sick calls to medical requesting not only medical attention for what later resul-

4.

in a fractured right foot/ankle; but also requested something for the
severe pain he was suffering.

17) When the medication nurse made her rounds, Plaintiff showed
her his injured (fractured) foot/ankle and asked for something for
the pain and for medical attention. Only to be ignored by this nurse.

18) Then on or about Jan. 06,2022, Plaintiff showed Nurse High
his injured foot/ankle and also this nurse saw that he was having a
hard time walking to the door. This nurse recommended that he just
elevate his leg, that this would decrease the pain and until he co-
uld be seen by the doctor. Please note at no time did this nurse ev-
er take any affirmative action to ensure that Plaintiff received ad-
equate medical attention for his now known fractured foot/ankle, nor
did he make sure that Plaintiff was given at least tylenol/ibuprofen
for the severe pain he was suffering.

19) On or about Jan. 07,2022, Plaintiff submitted another sick
call to medical and upon handing this to the nurse who was doing her
rounds and attempting to show this nurse his injured foot/ankle. The
nurse just accepted the pink slip and continued on her rounds.

20) These facts that Plaintiff is stating herein are easily veri-
fiable, as the cells he was in were at the beginning of the range and
under direct video surveillance.

21) It was not until on or about Feb. 11,2022, did Plaintiff fin-
ally see medical and wherein he was given a x-ray. At no time did USP
Hazelton staff ever provide him with the results of this x-ray and nor
did they provide him with any further medical attention. In fact, 3
days later he was transferred from that facility. The only good thing

that resulted from Plaintiff being transferred from USP Hazelton; was
that he no longer had to suffer the ridicule/bullying that officer
Vernon and other SHU staff subjected him too the whole time he was in
the SHU at Hazelton.

22) Upon him arriving at the Oklahoma transfer center, he immed-
iately informed the intake medical staff of his injury and even sho-
wed his injury to Oklahoma medical staff. At no time did this staff
member take any steps to provide me with adequate medical care, to
give me any medication for the severe pain he was suffering and told
him that he would need to sign up for medical/sick call in the Unit
he was to be assigned to and to state his medical issues.

23) Due to the fact that the Unit he was assigned to while at
the Oklahoma transfer center was on modified movement schedule, sig-
ning up for sick call was impossible and due to the fact that by
the time his range from said unit was released from their 1 and one
half hour time limit, the sick call sign in sheet had already been
picked up by staff.

24) Notwithstanding this fact as stated above, Plaintiff was not
deterred and at every available chance he informed the unit officer
of his injury, the pain he was suffering and went as far as to show
it to the unit officer. As is a widely used practice by All! BOP st-
aff, the unit officer told him that he would have to wait til the ne-
xt day and sign up for sick call.

25) At no time did any Hazelton or Oklahoma Transfer Center staff
made one attempt to insure that Plaintiff received immediate medical
attention for his injury (fractured right foot/ankle), and after he

6.

showed them his swollen and purple right foot/ankle. Which upon any person seeing said injury would easily determine that he did in fact need medical attention. Plaintiff does ask this court to take judicial notice that this spin game widely used by ALL BOP staff went on the whole time he was at the Oklahome Transfer Center and resulted in him never receiving any medical attention for his injury and the severe pain he was suffering.

26) Upon arriving at USP Canaan, Plaintiff was placed in the quarantine unit because he tested positive for covid-19. after being administered the test from medical staff. At no time in his initial medical assessment at the intake stage of his time at USP Canaan. Did staff ever provide him with any medical attention for his injured right foot/ankle.

27)It was not until he had been released from the quarantine unit and seen by medical staff that he was notified by USP Canaan staff on or about April of 2022, that the x-ray shows he had in fact "fractured his right foot/ankle.

28) Subsequent to him being given this notice as stated above, he was taken to see an outside doctor who prescribed that he be given a Cam Boot to wear.

29) During these events. Plaintiff had already initiated the FTCA processes and on or about Sept. 15,2022, Regional Counsel D. Lee did send Plaintiff a response to said tort claim. See (Exh. # 1). This exhibit will prove beyond all doubt to this court that the United States (via agecny official D. Lee) did not only accept their culpability but liability as well. However, Plaintiff was not in agreement

with this offer of $3500 to settle the claim. Please note, that D. Lee's Sept 15 2022 letter was subsequent to a phone conference she had with plaintiff some weeks before.

30) Being that Plaintiff was not in agreement with this settlement offer, he did respond to this unacceptable offer and on or about Oct. 04,2022 did cause to be sent to D. Lee a counter-offer. See (Exh. # 2), copy of said counter-offer.

31) Whereby on or about Oct. 20,2022 Regional Counsel D. Lee did send a response to Plaintiff's counter-offer and titled it Re: Reconsideration of Claim # TRT-MXR-2022-04994  See (Exh. # 3)  copy of said response. Via what amounted to willful misrepresentations of fact by D. Lee in her above dated response, Plaintiff took the time to send her a response clarifying her misrepresentations of fact.

32) This response was dated Oct. 31,2022 and was sent certified mail # 7021 2720 0000 9089 3493. See (Exh. # 4) copy of said dated letter. Upon D. Lee receiving this response, no further responses were received by Plaintiff and in accordance with the law D. Lee's Oct 20, 2022 was the final decision in this tort claim.

33) After seeing the outside doctor in or about the beginning of Sept. 2022, in the presence of persons believe to be from the Regional Office. Plaintiff was told by this doctor that they were going to take another x-ray. After the x-ray was taken and after who were believed to be staff from the Regional Office left. The doctor informs Plaintiff that his bone is healed and is as good as new and that he will not experience any future pain or loss of motion.

34) Before Plaintiff left the doctors office, he was told that he

was going to be prescribed a "functional ankle brace" and that USP Canaan staff would make sure to order and provide Plaintiff with this brace.

35) Plaintiff after several weeks/months of passing submitted several sick calls for the functional ankle brace as ordered by a licensed medical doctor. Only to be told that it was ordered. It was not until on or about Jan. 06,2023 (almost 4 months after the doctors order) that staff finally issued Plaintiff him the functional ankle brace that the doctor ordered the prior Sept. of 2022.

36) Plaintiff asks this court to take judicial notice of how long it took BOP officials to provide him with the ankle brace that a licensed doctor ordered him to have. Plaintiff asks this court to review (Exh. # 5), copy of the BOP Health Services Medical Duty Status form and as proof of how USP Hazelton and other BOP staff were negligent in providing him adequate medical attention regarding his fractured right foot/ankle.

### III. AGRUMENT

Title 18 § 4042 and <u>Muniz</u>, 374 U.S. at 164-65, provides in pertinent part, that the BOP SHALL!! provide suitable quarters, and provide for the safekeeping, CARE, and subsistance of ALL! persons charged with or convicted of all offenses against the United States. The facts that Plaintiff has outlined in the statement of facts portion of this FTCA suit, prove beyond all doubt that USP Hazelton and other BOP employees were negligent in failing to provide him with adequate medical care regarding his fractured right foot/ankle. There is no denying the fact that as soon as USP Hazelton employees saw that Pl-

aintiff's right foot/ankle were not only swollen but had turned purple. This is not even mentioning the fact that he was having a hard time walking while being escorted by Hazelton employees, and the expression of pain on his face should have been all that was needed for any one of these Hazelton employees to see that he needed immediate medical attention.

The Fourth Circuit explained in Heyer v FBOP, 849 F3d 202, 212 (4th 2017)(that a prison official's failure to respond to an inmates known medical needs, raises an inference of deliberate indifference to those needs). The facts that Plaintiff has already established in this FTCA suit also reveal that BOP employee, Regional Counsel D. Lee (a representative of the United States) has not only admitted culpability for her fellow United States employees' negligence in failing to provide Plaintiff with adequate medical care for his fractured right foot/ankle; but has also admitted that the United States is now liable to Plaintiff. See (Exh. # 1-4), made part of the record herein. The only issue at hand, and left for this court to determine is the amount of monies Plaintiff and the United States will ultimately agree upon and this includes not only the pain he suffered due to the negligence of USP Hazelton and other BOP employees; but for the mental and emotional suffering as well.

## IV. REQUEST FOR RELIEF

Wherefore the herein stated, Plaintiff hopes and prays that this court in accepting his claims as truthful and undisputable by the United States, orders it to enter into a just monetary settlement with Plaintiff for the actual pain and mental and emotional suffering; as

10.

a driect result of United States employees willful negligence in failing to provide him with adequate medical care for the fractured right foot/ankle he suffered while at USP Hazelton.

Respectfully

*Jorge Rocha 06331479*                    dated: 2.12.23

## CERTIFICATE OF SERVICE

I, Jorge Rocha do swear under penalty of perjury that I deposited a copy of this FTCA lawsuit in the mail repository box in Unit E-1 at USP Canaan on Feb. 12 , 2023, for delivery first class U.S. mail addressed to the party below:

Attn: D. Lee, Regional Counsel
United States Government
Federal Bureau of Prisons
Mid-Atlantic Regional Office
302 Sentinel Dr., Ste. 200
Anapolis Junction, MD 20701

*Jorge Rocha 06331479*        2·12·23